UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE ANN FALKENHAGEN, | Civil Action No.: 17-13601<br>Honorable Paul D. Borman<br>Magistrate Judge Elizabeth A. Stafford |
| Plaintiff | |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 17, 23]**

Plaintiff Stephanie Ann Falkenhagen appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- Falkenhagen's motion [ECF No. 17] be **GRANTED**;
- the Commissioner's motion [ECF No. 23] be **DENIED**; and
- the matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this report and

recommendation.

I.   **BACKGROUND**

   A.   **Falkenhagen's Background and Disability Applications**

Born April 5, 1969, Falkenhagen was 44 years old on the alleged disability onset date of October 2, 2013. [ECF No. 15-2, Tr. 50, 58]. She has past relevant work as a landscape laborer. [*Id.*, Tr. 58]. Falkenhagen claims disability due to degenerative joint disease, degenerative disc disease, carpal tunnel syndrome, colitis and fibromyalgia. [ECF No. 15-3, Tr. 118].

After a hearing on August 30, 2016, during which Falkenhagen and a vocational expert (VE) testified, the ALJ found that Falkenhagen was not disabled. [ECF No. 15-2, Tr. 50-60; ECF No. 16-2, Tr. 648-668]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [ECF No. 15-2, Tr. 1-7]. Falkenhagen timely filed for judicial review. [ECF No. 1].

   B.   **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Falkenhagen was not disabled. At the first step, he found that Falkenhagen had not engaged in substantial gainful activity since the alleged onset date of October 2, 2013. [ECF No. 15-2, Tr. 52]. At the second step, he found that Falkenhagen had the severe impairments of "degenerative disc disease, carpal tunnel syndrome, and fibromyalgia." [*Id.*]. He found that Falkenhagen suffered the non-severe impairments of bipolar disorder and major depressive disorder. [*Id.*, Tr. 53]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 54-55].

Between the third and fourth steps, the ALJ found that Falkenhagen had the RFC to perform light work, except that she:

> can occasionally climb ramps and stairs and balance. She is limited to frequent overhead reaching and to frequent handling. She must avoid even moderate exposure to vibration and must avoid all exposure to hazards.

[*Id.*, Tr. 55]. At step four, the ALJ found that Falkenhagen was not capable of performing her past relevant work as a landscape laborer. [*Id.*, Tr. 58]. At the final step, after considering Falkenhagen's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that

4

there were jobs that existed in significant numbers that Falkenhagen could perform, including positions as marker, router, and inspector/hand packager.  [*Id.*, Tr. 59].

## II.   ANALYSIS

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Falkenhagen argues the ALJ erred by not properly weighing the opinion of her treating neurologist and that the ALJ erred by not properly considering her urinary incontinence. [ECF No. 17]. The Court finds that the ALJ violated the treating physician rule, needing remand.

5

## A.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions about the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.[2] *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so; "these reasons must be supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight*." Gayheart v. Comm'r. of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Failure to analyze a treating source opinion under the

---

[2] Under new administrative rules, ALJs will weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520b; 416.920c. *Wolfe v. Comm'r. of Soc. Sec.*, 16-13620, 2017 WL 6627044, at *7 (E.D. Mich. Nov. 26, 2017), report and recommendation adopted, 16-CV-13620, 2017 WL 6621538 (E.D. Mich. Dec. 28, 2017). The new rules, however, apply only to claims filed on or after March 17, 2017. *Id.* Because Falkenhagen filed her claim well before March 17, 2017, the "treating physician rule" still applies. SSR 96-2

two-prong controlling weight test amounts to the failure to provide good reasons for giving that opinion less than controlling weight. *See id.* at 376-77.

And even when a treating opinion is considered not controlling, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.*

The ALJ assessed the opinion of treating neurologist Karim Fram, M.D., about the severity of Falkenhagen's physical limitations and assigned them only partial weight. [ECF No. 15-2, Tr. 56]. Dr. Fram opined that Falkenhagen should avoid repetitive use of her hands and completely avoid working above shoulder level. [*Id.*, Tr. 56-57; ECF No. 15-8, Tr. 416, 419, 422, 424, 426, 428, 430, 432, 435]. He diagnosed Falkenhagen with neck pain secondary to degenerative disc disease, foraminal stenosis at C5-6 and cervical (bilateral C7) radiculopathy, as well as carpal tunnel syndrome and fibromyalgia. [ECF No. 15-12, Tr. 550-594]. Dr. Fram's treatment notes reference chronic neck pain radiating into both shoulders, as well as

numbness in her arms, and stiffness and tenderness in the lower cervical spine. [*Id.*]. His treatment notes also cite EMG and MRI results, weakness in Falkenhagen's grip, and positive Spurling's and Phalen's maneuvers bilaterally as clinical findings and objective signs supporting his opinion. [*Id.*]

Despite Dr. Fram's oft-repeated opinion that Falkenhagen refrain from working above shoulder level and avoid repetitive use of the hands, the ALJ concluded that she was capable of frequent overhead reaching and frequent handling. [ECF No. 15-2, Tr. 55]. To support this conclusion, he cited only Falkenhagen's "testimony that she is able to perform some overhead reaching…with pain…" [*Id.*, Tr. 56-57].

This conclusion does not analyze Dr. Fram's opinion under the two-prong controlling weight test, and thus does not articulate the good reasons necessary to withhold controlling weight for that opinion. First, the decision is silent on whether the rejected opinion is well-supported by medically acceptable clinical and diagnostic evidence. Second, the ALJ's cited rationale for discounting Dr. Fram's reaching restriction—that the opinion is inconsistent with Falkenhagen's own testimony—does not support the ALJ's conclusion that Falkenhagen could frequently reach overhead.

8

When asked if she was "able to do any overhead reaching," Falkenhagen did respond, "Yes, I can." [ECF No. 16-2, Tr. 659]. But she continued:

> I mean, but, it's the, that's one of my, then that hurt, my neck starts to hurt also, and that was one of the limitations that the doctor said absolutely not to do because I have a pinched nerve too that goes so. I mean, I'm not saying I, I'd never do it, but I know that when I do do it, it's painful.

[*Id.*] This testimony, suggesting that Falkenhagen experiences pain whenever she reaches over her head, does not contradict Dr. Fram's opinion that Falkenhagen should avoid overhead reaching. And it certainly does not support the ALJ's determination that she is capable of overhead reaching between 1/3 and 2/3 of an eight-hour working day, the regulatory definition of frequently. *See* SSR 83-10.

Courts will not hesitate to remand when, as here, an ALJ fails to articulate good reasons for discounting a treating opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). For this reason, the Court recommends that this matter be remanded for reconsideration of the weight given to Dr. Fram's opinions regarding the severity of restrictions Falkenhagen required. If the ALJ still does not fully credit the doctor's opinions, he must articulate his reasoning, reference specific evidence in

9

the record, and apply the regulatory factors in assigning the appropriate weight to the opinions.

**B.**

The Commissioner contends that any ALJ error would be harmless because two of the jobs identified by the VE and relied on by the ALJ (marker and router) do "not involve postural movements"; thus, even if the ALJ had adopted all of Dr. Fram's restrictions, the outcome would be the same. [ECF No. 23, PageID.1441, ftnt.4]. But contrary to the Commissioner's assertion, the cited DOT entries state that frequent reaching and handling is required for both the router and marker occupations . DOT 222.587-038 Router, 1991 WL 672123; DOT 209.587-034 Marker, 1991 WL 671802. And the VE testified that if a hypothetical claimant matching Falkenhagen's age, education, past work and other restrictions were limited to only occasional reaching and handling, as opposed to frequent reaching and handling, there would be no jobs in the national economy for such a person. [ECF No. 16-2, Tr. 667]. Under these circumstances, the ALJ's error is anything but harmless.

### III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Falkenhagen's motion [ECF No. 17] be **GRANTED**; that the

Commissioner's motion [ECF No. 23] be **DENIED**; and that this matter be **REMANDED** for further consideration under sentence four of 42 U.S.C. § 405(g).

Dated: January 11, 2019

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and

11

Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.